UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SOUTHEAST FINANCIAL CREDIT UNION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 1:15-cv-01507-LJM-TAB ) ) |
| THE COLLEGE NETWORK, INC., MARK IVORY, GARY L. EYLER, ETEST OUT LEARNING SYSTEMS, LLC, CAREER LEARNING & ACADEMIC SUPPORT SERVICES, LLC, and GARY FAIR, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER ON MOTION TO DISMISS

Although the Court has ruled in favor of Plaintiff Southeast Financial Credit Union ("SFCU") on its breach of contract claim as to The College Network, Inc. ("TCN"), all Defendants, TCN, Mark Ivory ("Ivory"), Gary L. Eyler ("Eyler"), eTest Out Learning Systems, LLC doing business as Global Learn ("Global"), Career Leaning & Academic Support Services, LLC ("CLASS") and Gary Fair ("Fair") (all Defendants, collectively, "Defendants"), have moved to dismiss the remaining claims as against them for failure to state a claim upon which relief may be granted (the motions to dismiss, collectively, the "Motions").  Dkt. Nos. 45, 48 & 50.  SFCU asserts that the Motions must be denied because its claims are plead with the required specificity under Rules 8 and 9 of the Federal Rules of Civil Procedure ("Rules 8 and 9").  For the reasons stated herein, the Motions are **GRANTED in part and DENIED in part**.

## I. **STANDARDS**

Under the Supreme Court's directive in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive Defendants' motions to dismiss for failure to state a claim upon which relief may be granted, SFCU must provide the grounds for its entitlement to relief with more than labels, conclusions or a formulaic recitation of the elements of a cause of action. *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Court assumes that all the allegations in the Complaint are true, but the "allegations must be enough to raise a right to relief above the speculative level." *Id.* The touchstone is whether the Complaint gives Defendants "fair notice of what the … claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Legal conclusions or conclusory allegations are insufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). The Court may also consider documents attached to the Complaint and documents referenced in the Complaint, as well as take judicial notice of publicly available documents to decide the Motions. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Count III alleges a violation of the Indiana Uniform Fraudulent Transfer Act ("IUFTA"), which sounds in fraud; an Count IV alleges Constructive Fraud and Count V alleges Statutory Fraud; therefore, these claims are subject to the heightened pleading standard of Rule 9(b). *Schleicher v. Wendt*, 529 F. Supp. 2d 959, 961 (S.D. Ind. 2007). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To allege fraud with particularity, the SFCU must allege "the who, what, when, where, and how: the first paragraph of any

newspaper story." *United States v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (citation omitted).

## II. ALLEGED FACTS

The facts as alleged in the Complaint are:

TCN is an Indiana corporation formed in 1995. Compl. ¶ 2. Defendant Eyler is the Chief Executive Officer ("CEO") of TCN. *Id.* Defendant Fair is a former Vice President of TCN. Compl. ¶ 3. TCN is in the business of selling online study materials, referred to as "modules," allowing students to "test out" of certain classes required for a college degree. Compl. ¶ 12. These "modules" are alleged to be provided through an online "Portal." *Id.*

In 2003 and again in 2014, SFCU contracted with TCN to provide financing for TCN's customers to purchase these modules, and to pay for testing fees (collectively, the "Agreements"). Compl. ¶¶ 16-17. As part of these Agreements, SFCU alleges that TCN agreed to pay back any loan made by SFCU to a TCN customer in the event that TCN's customer either cancelled or defaulted on the loan. Compl. ¶¶ 21-26.

Beginning on or around January 2014, TCN failed to pay SFCU for chargebacks and cancellations as required under the Agreement. Compl.¶¶ 29-32. *See also* Dkt. No. 64 at 2 (describing the breaches that TCN has admitted). Further, SFCU alleges that on or about September 2, 2015, TCN informed it that TCN intends to sell the "Portal," "the only platform or method through with TCN students can access the modules they have purchased," to Defendants Global and CLASS. Compl. ¶¶ 37-39.

SFCU alleges that both Global and CLASS are run by Eyler, and that Fair is an officer of Global and "works for" Global and CLASS. Compl.¶¶ 7, 42. SFCU also claims that Global and CLASS provide the same services as TCN. Compl. ¶ 42. According to

the Complaint, the sale of the "Portal" was an "attempt to avoid TCN's expanding liabilities to and others."  *Id.*  The Complaint states further that SFCU was advised by "these individuals" that access to the "Portal" would be terminated or severely impacted for those consumers with SFCU loans unless SFCU agreed to pay $70,000.00 per month to Global and CLASS.  Compl. ¶ 43.  In other words, SFCU borrowers would have to pay extra to continue to get the benefit of access to modules for which they had already paid in full. *Id.*  SFCU contends that its TCN book of business would be compromised if its TCN loan customers did not have access to the modules through the "Portal."  Compl. ¶ 44.  SFCU claims that Eyler, Ivory and Fair are directing this activity.  *Id.*

Count I of the Complaint is for breach of contract and specifically identifies the Agreements with TCN as the Agreements that have been breached.  Compl. ¶¶ 45-57. This Count also alleges that the sale of the "Portal" from TCN to the Global/CLASS consortium is fraudulent and a thinly-veiled attempt to escape liabilities to SFCU and other entities.  Compl. ¶ 58.  The Complaint further states that the Global/CLASS business is a mere continuation of TCN; therefore, the obligations and liabilities of TCN can be attributed to Global and CLASS under a theory of successor liability and/or alter ego liability.  Compl. ¶¶ 58 & 61.  SFCU also contends that Defendants Eyler, Fair and Ivory have participated in, authorized and directed efforts to breach the Agreements; therefore, they should be held personally liable for the damages caused by the breaches.  Compl. ¶¶ 59-60.  In any event, because the companies and the individual defendants "have combined by concerted action to breach TCN's Agreements with SFCU . . . all Defendants are liable in civil conspiracy for breach of contract.  Compl. ¶ 62.

Count II of the Complaint alleges that all Defendants tortuously interfered with SFCU's contracts with TCN customers. Compl. ¶¶ 65-67. Specifically, each Defendant knew of the contractual relationships between SFCU and the TCN customers; they informed the TCN customers that their loans with SFCU had been cancelled; and there is no legitimate justification for Defendants' actions. Compl. ¶ 68-69. SFCU alleges the same successor liability, alter ego liability, personal liability and civil conspiracy liability for this Count as it did for the breach of contract Count. Compl. ¶¶ 70-75.

Count III of the Complaint alleges that the sale of the TCN "Portal" to Global/CLASS was engineered by Defendants Eyler and Ivory to avoid the liabilities of TCN to SFCU. Compl. ¶¶ 78-81. SFCU claims that the sale of the "Portal" was, in essence," a sale of TCN because the "Portal" was TCN's only asset. Compl. ¶¶ 82-85. SFCU avers that these activities violate the Indiana Uniform Fraudulent Transfer Act ("IUFTA"). Compl. ¶ 82. This Count alleges identical successor liability, alter ego liability, personal liability and civil conspiracy liability as the previous two Counts. Compl. ¶¶ 85-88.

Count IV of the Complaint states that based on the long-standing business relationship between SFCU and TCN, TCN had a duty to disclose material changes in its financial well-being prior to or during negotiations regarding the May 2014 Agreement. Compl. ¶¶ 91-94. TCN, it is alleged, was financially insolvent at that time, but assured SFCU that "it had a plan to resume sufficient cash flow to cover obligations." Compl. ¶ 94. SFCU contends that it justifiably relied on this assurance as well as others written into the May 2014 Agreement, but it would not have done so if it had known the truth about TCN's insolvency, and now it has lost significant sums of money. Compl. ¶¶ 95-

97. Further, SFCU asserts that TCN has gained an advantage at SFCU's expense because TCN continues to get money from SFCU for loans. Compl. ¶ 98. SFCU also makes the same claims in this Count regarding the allegedly fraudulent transfer of the "Portal" from TCN to Global/CLASS and asserts the same successor liability, alter ego liability, personal liability and civil conspiracy liability theories as the previous three Counts. Compl. ¶¶ 99-103.

Count V alleges that TCN has committed statutory fraud by accumulating more than $12 million in financial obligations to SFCU, then avoiding them by transferring its only asset, the "Portal," to TCN's Chief Executive Officer, Eyler. Compl. ¶¶ 105-08. Because SFCU is a state-chartered financial institution, SFCU contends that this attempted fraud violates Indiana Code §§ 35-43-5-4(8) and 35-43-5-8. Compl. ¶ 109. SFCU alleges that Global, CLASS, Eyler, Ivory and Fair "knowingly aided, induced, and caused the fraudulent sale of the Portal from TCN to Global/CLASS in an effort to avoid TCN's liabilities to SFCU, and therefore they are liable under Ind[iana] Code [§] 35-41-2-4 and share in the liability . . . ." Compl. ¶ 111.

Count VI alleges that TCN avoided its financial obligations to SFCU with a fraudulent conveyance directed by Eyler of TCN's only real asset, the "Portal," to Global/CLASS. Compl. ¶¶ 112-14. SFCU asserts that this transfer conveyed a benefit upon Global/CLASS to which it was not entitled and, in effect, gave Global/CLASS the monies due and owning TCN and SFCU without Global/CLASS having to pay anything for the "Portal." Compl. ¶ 115. SFCU argues that Global/CLASS have been unjustly enriched at SFCU's expense because of the fraudulent transfer. Compl. ¶¶ 116-17. This Count asserts that Global/CLASS are liable as alter egos of TCN (and each to the other).

Compl. ¶ 118.  Further, the Complaint states that Eyler, Ivory and Fair, as officers and directors of the Global/CLASS consortium, have authorized and directed these efforts; therefore, they should be held personally liable for all damages flowing from their actions. Compl. ¶ 119.

Finally, Count VII asserts that SFCU is entitled to injunctive relief to prevent Defendants from following through on their threat to terminate "Portal" access to SFCU/TCN consumers absent payment from SFCU to Global/CLASS.  Compl. ¶¶ 120-26.

### III. DISCUSSION

### A. COUNT I – BREACH OF CONTRACT

Defendants contend that this claim cannot stand as against Global, CLASS, Eyler, Fair and Ivory because SFCU admits that the Agreements were with TCN and SFCU has failed to allege sufficient facts to support any other theory of liability as to the other Defendants.  Dkt. No. 46 at 4; Dkt. No. 56 at 2-6.  SFCU argues that it has sufficiently plead a claim for breach of contract against TCN, which TCN does not dispute.  Dkt. No. 54 at 6-7.  Further, repeating its allegations in the Complaint, SFCU asserts that the fraudulent transfer of the Portal makes Global and CLASS liable as a successor in interest; that Global and CLASS are also liable as the alter ego of TCN because they are so closely connected they should be considered a single entity; the individual defendants are liable for ignoring and manipulating the corporate form to promote fraud such that the corporate veil should be pierced; and all Defendants are liable for damages resulting from the breach because they combined to engage in a concerted action to breach the Agreements.  *Id.* at 7-8.

Although some issues remain, by Order dated March 24, 2016, the Court ruled in favor of SFCU as to TCN's breach of the Agreements. *See* Dkt. No. 88. And, SFCU has admitted that the Agreements were between it and TCN; therefore, to succeed on this claim against the other Defendants, SFCU must allege facts from which each of them could be presumed to stand in the shoes of TCN. As to Global and CLASS, SFCU would have to show either that they are the successor-in-interest of or they are the alter ego of TCN. With respect to successor liability, generally, "where one corporation purchase the assets of another, the buyer does not assume the debts and liabilities of the seller." *Winker v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1233 (Ind. 1994) (citing *Markham v. Prutsman Mirror Co.*, 565 N.E.2d 385, 387 (Ind. Ct. App. 1991); FLETCHER CYCLOPEDIA § 7122). However, four recognized exceptions to this rule include: "(1) an implied or express agreement to assume the obligation; (2) a fraudulent sale of assets done for the purpose of escaping liability; (3) a purchase that is a de facto consolidation or merger; or (4) instances where the purchaser is a mere continuation of the seller." *Id.* Here, SFCU has alleged that TCN sold its only asset to Global/CLASS to avoid monies it owed to SFCU and others under the Agreements; or the purchaser, with the same owners, is a mere continuation of the seller. Further, the allegation that Global/CLASS undertook to cancel contracts between SFCU and consumers regarding access to classes the consumers had already paid for, supports a conclusion that the transfer of the Portal was an act of bad faith.

With respect to the individual Defendants, SFCU relies on the positions of Eyler, Ivory (directors of TCN) and Fair (former Vice President of TCN) as well as its allegations that the recently formed Global and CLASS have purchased TCN's only asset, the Portal,

to establish that each individual should be held liable under the Agreements. To pierce the corporate veil the Court considers "whether the corporate form has been adhered to, whether corporate assets are treated as such or as personal assets, and whether there has been an attempt to deceive third parties." *Winkler*, 638 N.E.2d at 1232 (citations omitted). As to the individual defendants, the facts plead in paragraphs 37 through 43, taken as true, imply that at least Eyler and Fair were personally involved with decisions related to both TCN and Global/CLASS that could indicate a failure to follow corporate form and/or an attempt to deceive third parties with respect to the alleged breach of the Agreements. Compl. ¶¶ 37-43. There are no similar allegations, however, with respect to Ivory. In light of this, the Court concludes that it is plausible that Eyler and Fair might be held liable for the actions of TCN and/or Global/CLASS under a veil-piercing theory; but there are no such supporting facts with respect to Ivory.

Similarly, the facts alleged as to the actions of Eyler and Fair might be considered in conjunction with those of TCN and Global/CLASS to support SFCU's civil conspiracy theory, but there are no similar allegations with respect to Ivory to put him on notice of his alleged role in furtherance of the conspiracy.

For these reasons, the Court will dismiss Count I as to Ivory only.

### B. COUNT II – TORTIOUS INTERFERENCE WITH CONTRACTS

Although there are five elements to prove tortious interference with contracts, the real dispute here is on the element of the absence of justification. *See* Dkt. No. 56 at 6. In *Winkler*, the Indiana Supreme Court adopted the factor test in the RESTATEMENT (SECOND) OF TORTS § 767 (1977) ("RESTATEMENT § 767"), for determining whether or not a defendant's conduct in intentionally interfering with a contract is justified. *Winkler*, 638

N.E.2d at 1235.  Those factors are: (a) the nature of the defendant's conduct; (b) the defendant's motive; (c) the interest of the plaintiff with which the defendant's conduct interferes; (d) the interest sought to be advanced by the defendant; (e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff; (f) the proximity or remoteness of the defendant's conduct to the interference; and (g) the relations between the parties.  *Id.* (quoting RESTATEMENT § 767).  There is no particular weight to any factor; "but the overriding question is whether the defendants' conduct has been fair and reasonable under the circumstances."  *Id.* (citing RESTATEMENT § 767, cmt. j).  Here, the Court can easily assess from the Complaint that TCN's actions to unilaterally cancel the contracts between SFCU and TCN consumers could amount to conduct that us unfair and unreasonable.  Further, for the reasons outlined in the previous section, there are enough facts alleged to make it plausible that Global/CLASS are a mere continuation of TCN such that it could be held liable in TCN's stead.  Similarly, if Eyler and Fair were involved with the TCN/Global/CLASS relationship as alleged in paragraphs 37 through 43 of the Complaint, there might be a plausible argument that it was at their direction that TCN started to cancel contracts with SFC-financed customers under a veil-piercing theory or under a civil conspiracy theory.  There are no specific allegations as to Ivory at all in this regard or with respect to any act in furtherance of a conspiracy.

For these reasons, the Court will dismiss Count II as to Ivory only.

### C.  COUNTS III, IV & V – FRAUD-RELATED CLAIMS

SFCU's fraud-related claims must be plead with the specificity required in Rule 9(b).  *See Cmedia Servs., LLC v. Rogers*, No. 1:15-cv-00435-SEB-MJD, 2015 WL 5022167, at *7 (S.D. Ind. July 31, 2015), *report & recomm. adopted*, No. 1:15-cv-00435-

SEB-MJD, 2015 WL 5022963 (S.D. Ind. Aug. 24, 2015).  Defendants assert that SFCU has failed to specify the who, what, where and how of the alleged fraudulent transfer to support any of its fraud claims.   Dkt. No. 46 at 7-9.  They also contend that SFCU has failed to plead the existence of a special relationship between it and each of the Defendants to support a constructive fraud claim.  *Id.* at 8.  The Court concludes that the facts alleged by SFCU in paragraphs 34 through 43, coupled with the additional allegations in each of the subsequent Counts, are specific enough as to TCN/Global/CLASS and Eyler and Fair, at this stage of the litigation, to support a claim under the IUFTA and statutory fraud as against those Defendants.  However, the Court can find no particularized facts with respect to Ivory's participation in any alleged fraudulent sale of TCN's Portal asset.  Further, the Court is not persuaded by SFCU that it has plead the existence of a "special relationship" between it and the entities, or it and the individuals that would give rise to a duty under a constructive fraud analysis.  *See Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 866 n.15 (S.D. Ind. 2014) (discussing the type of special relationship that must exist to give rise to liability under a constructive fraud claim).

For these reasons, Counts III, IV and V are dismissed as to Ivory; Count IV is dismissed as to all Defendants.

### D.  COUNT VI – UNJUST ENRICHMENT

The parties agree that to succeed on an unjust enrichment claim, "a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust."  *Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (citation

omitted).  In *Zoeller*, the Indiana Supreme Court specifically stated that the State had authorized riverboat gambling to ensure that gambling revenues benefit local development; therefore, allowing one of the development entities to use the gambling revenues for projects other than local development would amount to unjust enrichment of the development entity and the State was entitled to sue for the revenues.  *Zoeller*, 904 F.2d at 220.  Essentially, SFCU contends that Global/CLASS should not be entitled to profit from the fraudulent transfer of the Portal asset from TCN.  But, it is unclear from the Complaint exactly what "measurable benefit" SFCU bestowed upon any Defendant other than TCN that has allowed those other entities to be unjustly enriched.  SFCU seems to argue that as a creditor of TCN, it is unjust to allow Global/CLASS to retain the benefits of owning the Portal without paying SFCU first.  Dkt. No. 54 at 19.  To the extent it relies on successor liability, piercing the corporate veil, alter ego and conspiracy theories to support this claim, the Court has already agreed that those theories might be applicable to SFCU's breach of contract claim and, in the fact of a contractual relationship, this implied-in-law theory cannot stand.  *See Zoeller*, 904 N.E.2d at 221 (agreeing with the Indiana Court of Appeals' articulation of the general rule that, "[w]hen the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law").  For these reasons, the Court **GRANTS** Defendants' motion to dismiss this Count.

### E.  COUNT VII – INJUNCTIVE RELIEF

Defendants contend that SFCU's "claim" for injunctive relief should be dismissed because it has not plead that it has no remedies at law.  Dkt. No. 46 at 10-11; Dkt. No. 56 at 10-11.  Essentially, SFCU argues that, even if it had to plead facts to support this remedy, which SFCU disputes, it adequate plead that it had no adequate remedy at law

in its contemporaneously-filed motion for temporary restraining order and motion for preliminary injunction.  Dkt. No. 54 at 20-21.  The Court concludes that, to the extent it was necessary, SFCU adequately pleaded that the sale of the Portal to Global/CLASS would result in its TCN-loan customers being unable to access their already paid up classes unless SFCU paid additional money to Global/CLASS for the privilege.  If SFCU's theories of liability "at law" for Global/CLASS failed, it would be significantly harmed, but without a remedy.  For this reason, Defendants' motion to dismiss this "Count" is **DENIED**.

## IV.  CONCLUSION

For the reasons stated herein, Defendants', The College Network, Inc., Mark Ivory, Gary L. Eyler, eTest Out Learning Systems, LLC doing business as Global Learn, Career Leaning & Academic Support Services, LLC, and Gary Fair, Motions to Dismiss are **GRANTED in part and DENIED in part**.  Dismissal of any claims as to any defendant is without prejudice; Plaintiff Southeast Financial Credit Union shall have fourteen (14) days from the date of this Order to file an Amended Complaint if it chooses to do so.

IT IS SO ORDERED this 28th day of March, 2016.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution:

Alexander Pape Orlowski
BARNES & THORNBURG LLP (Indianapolis)
aorlowski@btlaw.com

Karoline E. Jackson
BARNES & THORNBURG LLP (Indianapolis)
kjackson@btlaw.com

Michael K. McCrory
BARNES & THORNBURG LLP (Indianapolis)
mmccrory@btlaw.com

Christopher Charles Hagenow
BLACKWELL, BURKE & RAMSEY, P.C.
chagenow@bbrlawpc.com

Jason R. Burke
BLACKWELL, BURKE & RAMSEY, P.C.
jburke@bbrlawpc.com

Harley K Means
KROGER GARDIS & REGAS LLP
hkm@kgrlaw.com

James A. Knauer
KROGER GARDIS & REGAS, LLP
jak@kgrlaw.com

Trent L. Richards
THE BOURASSA LAW GROUP, LLC
trichards@bourassalawgroup.com

Andrew A. Warth
WALLER LANSDEN DORTCH & DAVIS, LLP
drew.warth@wallerlaw.com

Chanelle R. Acheson
WALLER LANSDEN DORTCH & DAVIS, LLP
chanelle.acheson@wallerlaw.com

Jeremy A. Oliver
WALLER LANSDEN DORTCH & DAVIS, LLP
jeremy.oliver@wallerlaw.com

John E. Haubenreich
WALLER LANSDEN DORTCH & DAVIS, LLP
john.haubenreich@wallerlaw.com